UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KRISZTIAN MARK RIEZ,

          Plaintiff,

    v.

TURO, INC.,

          Defendant.

Case No.  25-cv-06901-AMO

**ORDER OF DISMISSAL**

Re: Dkt. Nos. 35, 39, 46, 47, 51

Plaintiff Krisztian Mark Riez asserts claims of negligence and breach of contract arising from his rental of a third-party vehicle through Defendant Turo, Inc.'s ("Turo") online platform. Before the Court are several motions, including Turo's motion to dismiss the First Amended Complaint.  Dkt. No. 35.  The matter is fully briefed and suitable for decision without oral argument.  Accordingly, the hearing set for June 4, 2026, is VACATED.  *See* Civil L.R. 7-6, Fed. R. Civ. Pro. 78(b).  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** Turo's motion to dismiss for the following reasons.

I.      **BACKGROUND**

Riez's First Amended Complaint ("FAC") alleges he booked a vehicle using Turo's online peer-to-peer marketplace, he was stopped at the United States and Canada border while he was driving the minivan, and he was shortly detained after the minivan tested positive for the presence of a controlled substance during a routine border stop.  These are the same facts Riez alleged in his prior pleading, which was dismissed with leave to amend to state additional facts showing that Plaintiff's injury was traceable to Turo.  *See* Dkt. No. 24.  The Court restates the relevant factual background before describing the procedural history of the case.

**A.    Factual Background[1]**

Turo offers an online personal sharing program that connects vehicle owners or their authorized representatives ("hosts") with individuals ("guests") seeking to book hosts' vehicles throughout the United States and in Canada, France, or Australia.  Armstrong Decl. (Dkt. No. 35-1) ¶ 3.  Turo does not own the vehicles hosts list for booking in its online peer-to-peer marketplace, and it does not maintain hosts' vehicles.  *Id.* ¶ 4.

To utilize the Turo platform, both hosts and guests agree to Turo's Terms of Service (the "Terms").  Armstrong Decl. ¶ 7.  Turo's Terms state in part:

> Turo may, but does not commit to, undertake efforts to ensure the safety of vehicles shared through the Services. We do not make any representations about, confirm, or endorse the safety, roadworthiness, or legal status of any vehicles shared via the Services. Rather, hosts have sole responsibility to ensure their vehicles are in safe and operable condition, legally registered to be driven on public roads, have a clean title (e.g., non-salvaged/non-branded/non-washed/non-written off), not subject to any applicable safety recalls, and otherwise satisfy our vehicle eligibility requirements.

Armstrong Decl., Ex. A at 3.  Specifically relevant to guests, the Terms state in part:

> You acknowledge that Turo is not responsible and shall not be liable for the safety, roadworthiness, or legal status (e.g., whether the vehicle is legally registered or the subject of a stolen vehicle report) of any vehicles shared via the Services. Rather, hosts have sole responsibility to ensure their vehicles are in safe and operable condition, legally registered to be driven on public roads, not subject to a missing or stolen vehicle report, have a clean title (e.g., non-salvaged/non-branded/non-washed/non-written off), not subject to any applicable safety recalls, and otherwise satisfy our vehicle eligibility requirements. You also acknowledge and agree that neither Turo nor hosts are responsible for lost or stolen property left in any vehicle or taken or damaged during a trip.

*Id.* at 13.

---

[1] Though the Court typically accepts the truth of a plaintiff's allegations for purposes of resolving a motion to dismiss, given the substance of Turo's factual attack, the Court considers evidence outside the complaint as well.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.").

Riez alleges that on or about February 10, 2025, he booked a 2025 Dodge Grand Caravan (the "minivan") through Turo for a trip scheduled for February 18-20, 2025. FAC at 4. Under the car-sharing agreement, Riez obtained " 'Premier' protection providing up to CAD $2,000,000 in liability coverage and other protections." *Id.* Turo represented that the "vehicles listed on its platform are safe, properly maintained, and covered by appropriate insurance and protections." *Id.* at 5. In the course of Riez's use of the minivan, officials from the Canada Border Services Agency ("CBSA") inspected the minivan and found it tested positive for the presence of fentanyl. *Id.* at 5. The positive drug test resulted in Riez's immediate detention, searches of his person and personal property, and reputational harm as well as a host of medical and psychological harms. *Id.* at 5-6. Riez reported the fentanyl contamination and border detention to Turo. *Id.* at 8.

Riez's alleged injuries as a result of the border stop include (1) loss of liberty, humiliation, and emotional distress, (2) diagnosed PTSD relapse, depression, anxiety, and sleep disturbances, (3) reputational harm, (4) economic loss, including the loss of a CAD $850,000 expected sponsorship opportunity, and (5) out-of-pocket medical, therapy, and legal-consultation expenses. *See* FAC at 11-12. Riez does not claim that he suffered any physical harm from fentanyl exposure. *Id.* at 6 (alleging he and his passenger were "detained" for several hours, "questioned," and "subjected . . . to intrusive searches."). Riez does not specify how the incident itself caused him reputational harm, particularly given that border officials did not take any action against him beyond the investigatory detention. FAC at 6. Riez suggests that his detention may impact future border crossings. *Id.* at 3. Finally, Riez posits that the border detention created a mental health impairment that contributed to the collapse of an approximate CAD $850,000 sponsorship deal for a non-party business entity. *Id.* at 12; *see also id.*, Ex. F. Riez seeks compensatory damages in the amount of US $1,500,000, an award of damages for emotional distress, mental-health treatment, reputational injury, and all related medical and economic losses, as well as public injunctive relief. *See id.* at 18-19.

**B.    Procedural History**

On July 11, 2025, Riez filed his original complaint against Turo in San Francisco Superior Court, alleging claims for (1) general negligence, (2) breach of contract, (3) negligent

misrepresentation, (4) concealment, and (5) promissory estoppel. *See* Notice of Removal, Ex. A, (Dkt. No. 1). On July 14, 2025, Turo removed the action to the District Court for the Northern District of California based on diversity jurisdiction. *See* Notice of Removal, Dkt. No. 1. On August 21, 2025, Turo filed a motion to dismiss and motion to strike the complaint. *See* Dkt. No. 9. On December 19, 2025, the Court granted Turo's motion to dismiss for lack of subject matter jurisdiction with leave to amend. *See* Dkt. No. 24.

On January 13, 2026, Riez filed the FAC, alleging claims for (1) negligence and (2) breach of contract and implied covenant of good faith and fair dealing. *See* Dkt. No. 29. In this amended pleading, Riez chose not to amend the dismissed claims of either fraud or promissory estoppel. *Id.*

Turo now moves to dismiss the FAC on grounds similar to those raised in its first motion to dismiss. Dkt. No. 35. Following complete briefing, Riez filed a motion for leave to file a sur-reply brief. Dkt. No. 47. Riez's argument that Turo raised certain arguments for the first time in its reply brief misrepresents the contents of Turo's motion as well as the reply, but further, Riez's arguments do not address the issue of standing discussed below. *See id.* The Court therefore **DENIES** Riez's motion for leave to file a sur-reply.

## II.    DISCUSSION

Turo includes multiple requests for relief in its motion, including (1) a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction based on a lack of standing;[2] (2) a motion to dismiss under Rule 12(b)(6) for failure to state a claim sounding either in negligence or in contract; (3) and a motion under Rule 12(f) to strike (a) a new cause of action included in the FAC withoutleave of Court or Defendant's consent, as well as (b) Riez's request for injunctive relief.[3] *See generally* Dkt. No. 35. As it did in its order dismissing Riez's original complaint, the

---

[2] Turo additionally filed a request for judicial notice in support of its motion. Dkt. No. 36. Riez states that he does not oppose judicial notice of the materials submitted by Turo, he instead disagrees with their legal significance. *See* Dkt. No. 37 at 14. The Court agrees with Riez – trial courts may consider the existence of judicially-noticeable materials at the Rule 12(b) stage without necessarily resolving disputes about such materials or accepting the truth of their contents. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1001 (9th Cir. 2018). The Court accordingly **GRANTS** Turo's request for judicial notice as to the existence of those documents.

[3] In the order dismissing the original complaint and granting Riez leave to file an amended complaint, the Court specified, "No additional parties or claims may be added without leave of

4

Court focuses its attention on the question of subject matter jurisdiction and does not reach the remaining issues.

### A.   Standing

The Court evaluates challenges to Article III standing under Rule 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the court determines whether the factual allegations are sufficient to invoke the court's subject matter jurisdiction. *Id.* When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see also Leite*, 749 F.3d at 1121. The court need not presume the truthfulness of the plaintiff's allegations under a factual attack. *Wood v. City of San Diego*, 678 F.3d 1075, 1083 n.8 (9th Cir. 2012).

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case – in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). To establish standing, "(1) the plaintiff [must have] suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.' " *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "To establish an injury in fact, a plaintiff must show that he or she suffered 'an

Court or stipulation of Turo." Dkt. No. 24 at 5. Plaintiff's improper inclusion of a new claim for breach of the implied covenant of good faith and fair dealing in the FAC fails to comply with the Court's order, warranting its dismissal. However, the Court need not strike the defective claim in particular because it dismisses the entire action for the reasons below.

United States District Court
Northern District of California

invasion of a legally protected interest' that is 'concrete and particularized.' " *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 597 (9th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), as revised (May 24, 2016)).

"[P]laintiffs must establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.' " *Maya*, 658 F.3d at 1070 (quoting *Allen v. Wright*, 468 U.S. 737, 757 (1984)).  Although "a causation chain does not fail simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausib[le],' " *id.* (quoting *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)), "[w]here a chain of causation 'involves numerous third parties' whose 'independent decisions' collectively have a 'significant effect' on plaintiffs' injuries, the Supreme Court and [the Ninth Circuit] have found the causal chain too weak to support standing at the pleading stage." *Maya*, 658 F.3d at 1070 (citing *Allen*, 468 U.S. at 759).  "A plaintiff's injury is 'fairly traceable' when there is a 'substantial likelihood' that the defendant's conduct caused the harm." *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 878-79 (N.D. Cal. 2024) (quoting *NRDC v. Texaco Ref. & Mktg., Inc.*, 2 F.3d 493, 505 (3d Cir. 1993)).  "[W]hat matters is not the 'length of the chain of causation,' but rather the 'plausibility of the links that comprise the chain.' " *Mendia v. Garcia*, 768 F.3d 1009, 1012-13 (9th Cir. 2014) (quoting *Nat'l Audubon Soc.*, 307 F.3d at 849).

Here, Riez fails to establish a line of causation between Turo's conduct and his harm that is more than attenuated.  *Maya*, 658 F.3d at 1070.  As noted at the outset, Turo is an online peer-to-peer car sharing platform that connects hosts with guests seeking to book a host's vehicle for use.  Armstrong Decl. ¶ 3.  Riez's attempt to characterize the minivan as "Turo's vehicle" is not only incorrect, it is directly contradicted by Riez's own exhibits.  *See* FAC, Ex. O (Dkt. No. 29-14) ("Turo is a digital peer-to-peer car sharing platform, where private car owners share their personal vehicles with others in exchange for compensation.").  To the contrary, Turo does not own any vehicles, including the minivan.  *See* Armstrong Decl. ¶ 4; Dkt. No. 35-1 (Turo does not own or maintain the vehicles that hosts list for booking on its platform.).  Turo, moreover, does not have responsibility for the safety of the vehicles booked on its platform.  Armstrong Decl., Ex. A at 13.

And because Riez confuses Turo's role in the transaction, he fails to acknowledge the conduct of third parties whose independent decisions impacted his purported injuries. Riez alleges that the minivan he booked through Turo contained fentanyl residue, but he did not suffer any direct harm from the controlled substance. FAC at 4, 7. Rather, Riez suffered the following injuries arising from the CBSA detention: loss of liberty, humiliation, emotional distress, reputational harm, economic loss, and medical expenses. FAC at 18-19. The chain of causation thus relies on the independent decisions of at least (1) the vehicle's owner, or the host responsible for maintaining and cleaning the minivan to be rented on the Turo platform, (2) the previous driver or person in control of the minivan,[4] and (3) the CBSA, a law enforcement agency unrelated to Turo or the vehicle rental relationship. These absent third parties had a "significant effect" on Riez's asserted injuries, leaving the "causal chain too weak to support standing at the pleading stage." *Maya*, 658 F.3d at 1070. And in the end, Riez's allegations remain too unclear to trace his injuries to Turo's purported action of allowing him to book the third-party host's "drug-contaminated vehicle" over Turo's platform. Riez does nothing more than conclude that he suffered "concrete, particularized injuries," most clearly attributable to the actions of absent third parties, without alleging how Turo contributed to these injuries. Dkt. No. 37 at 7-8. This is insufficient to establish standing.

In an effort to make up for the absence of any alleged harm attributable to Turo's conduct, Riez asserts possible future injuries. FAC at 13. But future injuries that may never occur and harms that may impact unknown third parties do not represent concrete or particular injuries sufficient to assert a claim. *Larson v. Trans Union, LLC*, 201 F. Supp. 3d 1103, 1105 (N.D. Cal. 2016) (explaining that a concrete injury "is one that actually exist[s], meaning that it is real, and not abstract.") (internal citation and quotation marks omitted). Riez cannot assert standing based on potential harm from Turo's continued listing of the minivan on its platform, anticipated harm to unknown Turo guests that remains "hypothetical or tenuous" and thus not actionable. *Maya*, 658 F.3d at 1070; *see also* FAC at 8.

---

[4] Riez concedes that an earlier driver of the minivan – not Turo – is likely the wrongdoer by alleging a previous driver left fentanyl residue inside of the minivan. FAC at 7.

7

Riez ultimately argues that the Court should "infer" Article III standing at the pleading stage because it is "plausible" his injury can be traced to Turo after discovery.  Dkt. No. 37 at 8.  But that argument applies the wrong standard.  Article III standing must be shown at the pleading stage – not proven after extensive discovery as Riez contends.  *Spokeo*, 578 U.S. at 338 ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of Article III standing]." (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  Riez does not bear his burden.  Because he fails to state facts showing there was a substantial likelihood that any act or omission by Turo caused his harm, Riez lacks standing to state any of the asserted claims against Turo.

**B.    Further Leave to Amend**

"Generally, Rule 15 advises the court that leave shall be freely given when justice so requires. This policy is to be applied with extreme liberality."  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotations and citations omitted).  Courts may deny leave to amend "only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc."  *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (modification in original).

Here, Riez failed to cure deficiencies identified in the Court's order dismissing his original complaint.  *See* Dkt. No. 24.  Indeed, the FAC contains the same defective theories of purported harm asserted in the original complaint and it still fails to establish standing against Turo.  The failure to cure deficiencies by amendment previously allowed warrants denial of further leave to amend.

Following complete briefing of the motion to dismiss the FAC, Riez filed a motion seeking leave to file a second amended complaint.  Dkt. No. 39.  Riez's proposed second amended complaint continues to assert the same purported harms, emphasizing the potential harm to absent third-parties based on Turo's continued listing of the minivan despite Riez's complaints of contamination.  *See generally* Dkt. No. 48-1 (proposed second amended complaint).  In his briefs,

Riez still fails to identify how his proposed amended pleading addresses the standing defect that underpinned the Court's earlier dismissal order. *See* Dkt. Nos. 35 & 50. Riez's proposed amendment accordingly still fails as futile because it still does not demonstrate that Riez suffered an injury traceable to Turo's conduct. Therefore, the Court declines to permit further amendment.

## III.     CONCLUSION

Because Riez fails to offer facts establishing injury in fact, and because Riez fails to establish that any injury is traceable to Turo's conduct, Riez lacks Article III standing to bring this action against Turo. The Court therefore **GRANTS** Turo's motion to dismiss for lack of subject matter jurisdiction. The Court does not reach the remaining arguments for dismissal. The Court **TERMINATES** all remaining motions and stipulations as moot. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: April 29, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**

United States District Court
Northern District of California

9